UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDREW WILLIAM BROWN,

    Plaintiff,

v.

Case Number 09-14537
Honorable Thomas L. Ludington

GOJCAJ FOODS, INC.,

    Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

On November 19, 2009, Plaintiff Andrew William Brown ("Plaintiff"), a Caucasian male, filed a complaint, alleging sexual harassment, racial discrimination, and retaliation claims under Title VII of the Civil Rights Act of 1964 and Michigan's Elliot-Larsen Civil Rights Act. ECF No. 1. Plaintiff's claims arise out of a series of events during his employment as a server/waiter in Defendant Gojcaj Foods, Inc.'s restaurant, The Willow Tree.

Plaintiff later filed a charge of discrimination with the United States Equal Employment Opportunity Commission on February 27, 2008 and Defendant was served with a copy of Plaintiff's charge shortly thereafter. Upon receiving notice of Plaintiff's charge, Plaintiff alleges Defendant began retaliating against him and eventually terminated his employment. Defendant contends that Plaintiff's employment was terminated because he had violated the alcohol and smoking policies of Defendant's restaurant. Plaintiff believes that this reason is mere pretext for his retaliatory termination.

Defendant was served with process on February 5, 2010, and its answer was due by February 26, 2010. ECF No. 4. No answer was filed. Plaintiff procured a clerk's entry of default against

Defendant on March 1, 2010. ECF No. 6. On March 9, 2010, Defendant's attorney filed an appearance on behalf of Defendant. ECF No. 7. On April 23, 2010, defense counsel filed a motion to set aside the default. ECF No. 8.

Magistrate Judge Charles E. Binder granted Defendant's motion to set aside the default on June 28, 2010, because Plaintiff had not demonstrated that he would be prejudiced by setting aside the entry of default. ECF No. 15. Judge Binder did, however, condition the relief granted on Defendant's payment of $3,909.00 in costs and attorneys fees to Plaintiff. Defendant subsequently filed an answer to Plaintiff's complaint on July 19, 2010. ECF No. 16.

On January 5, 2011, Plaintiff served Defendant with interrogatories and requests to produce. Under Federal Rules of Civil Procedure 33 and 34, Defendant's responses to the discovery requests were due on February 4, 2011. Defendant did not provide any discovery responses by the due date.

On February 8, 2011, the Court held a settlement conference, where Plaintiff's counsel reminded defense counsel that Defendant's discovery responses were overdue. As of March 1, 2011, Plaintiff's counsel had not received the discovery responses and sent an email to defense counsel again requesting that the responses be provided. No responses were forthcoming.

On March 17, 2011, Plaintiff filed a motion for re-entry of default. ECF No. 23. As of the date of Plaintiff's motion, the requested discovery responses had not been furnished. Discovery was scheduled to be completed by March 31, 2011. Plaintiff contended that Defendant's conduct surrounding the original entry of default and disregard for discovery deadlines justified his request for re-entry of default and default judgment as a sanction under Federal Rule of Civil Procedure 37. Defendant filed a response on April 7, 2011, which did not address Plaintiff's arguments in his request for the re-entry of default but merely requested that the Court deny Plaintiff's motion.

Plaintiff's requested discovery responses were attached as exhibits to the response. Plaintiff's reply emphasized that Defendant's response was the first time Defendant had provided the discovery responses.

The Court entered an opinion and order granting in part Plaintiff's motion for re-entry of default on May 20, 2011. ECF No. 27. A default was entered against Defendant and a hearing for determination of the amount of Plaintiff's damages was scheduled because Defendant had not proffered any evidence or argument to meet its burden of showing that its inability to comply with discovery requests was not due to willfulness and bad faith. Defendant also had not demonstrated an interest in complying with the deadlines imposed in the case, making an extension of discovery an ineffective remedy. Moreover, Defendant had demonstrated that the earlier sanction for non-compliance with the procedural rules governing the progress of the case had been ineffective in securing Defendant's consideration of those rules. The opinion acknowledged that entering a default was serious, but that Defendant's conduct offered little justification for a lesser remedy.

On June 3, 2011, Defendant filed a motion for reconsideration of the Court's May 20, 2011 order. ECF No. 28. Defendant contended that reconsideration was proper summarily because Defendant's failure to provide discovery responses was not due to willfulness, bad faith, or fault, that Plaintiff had not been prejudiced by Defendant's failure to respond to the discovery requests, that Defendant had not been warned that his misconduct might lead to entry of a default, and that less drastic sanctions could have been imposed but were not. The Court denied Defendant's motion for reconsideration and scheduled an evidentiary hearing to address Plaintiff's request for a default judgment. ECF No. 34. Defendant subsequently filed a motion for leave to file a motion for summary judgment which the Court denied because the primary factual attributes on which

Defendant relied, that Plaintiff is a Caucasian male, had been known since the outset of the case which was filed over two years ago. ECF No. 40.

Once a default is entered, the defaulting party loses standing and may suffer a number of consequences, including, in relevant part, loss of the right to present evidence on issues other than unliquidated damages or loss of standing to contest the factual allegations in the complaint. *See Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988); *Dow Chem. Pac. Ltd. v. Rascator Maritime, S.A.*, 782 F.2d 329, 335-37 (2d Cir. 1986). At the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted but the plaintiff's conclusions of law are not deemed established. *Bonilla v. Trebol Motors Co.*, 150 F.3d 77, 80 (1st Cir. 1998). Accordingly, the Court may grant only the relief for which a sufficient basis is asserted in the complaint. *Thomson v. Wooster*, 114 U.S. 104, 113 (1855). While a defaulted party loses standing to contest the truth of the facts alleged in support of the plaintiff's claims, that party may still contest the sufficiency of those facts to state a claim for relief. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Once an entry of default establishes the factual allegations of a complaint relating to liability, the district court has considerable latitude in determining the amount of damages pursuant to a Federal Rule of Civil Procedure 55 hearing. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). A Rule 55 hearing to address Plaintiff's request for a default judgment was held on November 28, 2011. Plaintiff testified on his own behalf and called no other witnesses. Defense counsel called as witnesses the co-owner of The Willow Tree, Anthony Gojcaj, The Willow Tree's manager, Mike Bojaj, and one of Plaintiff's former coworkers, Sarah Bickham.

## I. Title VII Remedies

Retroactive relief pursuant to Title VII provides that individuals who suffer Title VII violations are entitled to be made whole "for injuries suffered on account of unlawful employment discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Because of the "make whole" and deterrent purposes at the core of Title VII, a finding of a Title VII violation presumptively entitles the victim of the discrimination to back pay and retroactive promotion or reinstatement. *Id.* at 422. Courts have split on whether unemployment insurance should be deducted from the amount awarded as back pay. In the Sixth Circuit, however, a civil rights victim's back pay award is not to be reduced by any unemployment benefits he received. *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 627 (6th Cir. 1983). If the court determines that an award of back pay does not fully redress a Title VII plaintiff's injuries, and reinstatement is not possible, an award of front pay is sometimes appropriate in order to fully effectuate the "make whole" purposes of Title VII. *Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985). Awards of front pay should be evaluated under the standards applied to all Title VII relief: whether the award will aid in ending illegal discrimination and rectifying the harm it causes. *Id.* at 1160 (citing *Thompson v. Sawyer*, 678 F.2d 257, 259 (D.C. Cir.1982)).

The Civil Rights Act of 1991 also allows the complaining party in a Title VII action to recover compensatory and punitive damages against a defendant who has engaged in unlawful intentional discrimination. *See* 28 U.S.C. § 1981a(a)(1). Compensatory damages under this section do not include back pay, interest on back pay, or any other type of relief authorized under § 706(g) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(g). 42 U.S.C. § 1981. For punitive damages, the plaintiff must show that the defendant "engaged in a discriminatory practice . . . with malice or with

reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Malice or reckless indifference does not simply refer to the egregiousness of the employer's misconduct, although this is one element of the analysis. Instead, the terms relate to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 527 (1999).

There is a three-part inquiry to determine whether punitive damages are proper in a Title VII case: (1) the plaintiff must show that the individuals perpetrating the discrimination acted with malice or reckless disregard as to whether the plaintiff's federally protected rights were being violated; (2) in order to impute liability to the employer, common law rules of agency apply; and (3) even if the plaintiff is successful in proving the first two inquiries, the defendant can nonetheless avoid liability for punitive damages if it can show that it engaged in good faith efforts to comply with Title VII. *See Parker v. General Extrusions, Inc.*, 100 Fair Empl. Prac. Cas. (BNA) 1489 (6th Cir. 2007). Despite the equitable nature of Title VII remedies, some courts have awarded nominal damages to successful plaintiffs for whom no other remedy is available. *See, e.g.*, *Katz v. Dole*, 709 F.2d 251, 253 (4th Cir. 1983).

## II.   Discussion

### A.   Legal Standards

#### 1.   Same-sex Sexual Harrassment

Title VII of the Civil Rights Act and Michigan's Elliot-Larsen Civil Rights Act make it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. § 2000e-2(a)(l); Mich. Comp. Laws 37.2202(1)(a). The sexual harassment proscribed includes both hostile

or abusive environment claims as well as sexual conduct or activity which is directly linked to the grant or denial of an economic quid pro quo. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65-66 (1986).

To state a prima facie case of hostile work environment racial or sexual harassment, a plaintiff must establish the following: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the communication or conduct to which the employee was subjected was unwelcome; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *See, e.g.*, *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347(6th Cir. 2005); *Radtke v. Everett*, 442 Mich. 368, 382-83 (1993).

"As with all harassment, same-sex harassment must be 'because of sex' to be actionable under Title VII. In other words, Plaintiffs must show that but for their gender they would not have been harassed." *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 438 (6th Cir. 2006) (internal citations omitted). Same-gender hostile work environment claims are also actionable under the ELCRA. *See Robinson v. Ford Motor Co.*, 277 Mich. App. 146, 153 (2007). Same-sex harassment, however, need not be motivated by sexual desire to support an inference of discrimination "based on sex" but an individual cannot make out a claim of sexual harassment "merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80, 82 (1998). The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (internal citations and quotations omitted).

There are three evidentiary routes a plaintiff may utilize to prove that discrimination was based on sex: (1) explicit or implicit proposals of sexual activity motivated by sexual desire, (2) harassment motivated by a general hostility toward members of one gender in the workplace, or (3) comparative evidence about how the defendant treated members of both sexes differently in a mixed-sex workplace. *Lavack v. Owen's World Wide Enterprise Network, Inc.*, 409 F. Supp. 2d 848, 853-56 (E.D. Mich. 2005) (citing *Oncale*, 523 U.S. at 80-81). "Whatever evidentiary route Plaintiff chooses to follow, he must prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] because of sex.' " *Oncale*, 523 U.S. at 81 (ellipses omitted).

The Sixth Circuit has rejected same-sex sexual harassment hostile work environment claims where, although the harassment was sexual, crude, and derogatory in nature, it was not "because of . . . sex" as required by Title VII. *Baugham*, 211 F. App'x at 439 (summarily dismissing the claims of female employees suing their employer for same-sex sexual harassment and alleging that their employer made derogatory comments about the female genitalia, spoke about her sex life, and touched her genitalia in front of the employees because most of the allegations of harassment had nothing to do with the fact that the employees were female); *see also Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 765 (6th Cir. 2006) (granting defendant's motion for judgment on the pleadings because the plaintiff's complaint did not indicate his harassers acted out of sexual desire or support an inference of general hostility toward men in the workplace where plaintiff claimed that a coworker made sexually based comments about the plaintiff, called him "gay", and physically harassed plaintiff by touching his crotch with a tape measure). Evidence that women were not subjected to the same offensive comments and touching as men in a workplace is not sufficient to

establish a hostile work environment claim. *Lavack v. Owen's World Wide Enterprise Network, Inc.*, 409 F. Supp. 2d 848, 853-55 (E.D. Mich. 2005). "Since the conduct complained of in many of these sexual harassment cases is so offensive, it is easy to understand that a sense of decency initially inclines one to want to grant relief[;] . . . however, . . . Title VII deals with discrimination in the workplace, not morality or vulgarity." *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 520 (6th Cir. 2001) (concluding that the employer harasser was not motivated by a general hostility to men in the workplace; the employer enjoyed having men around to "roughhouse with" and the plaintiff did not make a prima facie showing of discrimination based on sex by alleging his employer grabbed his genitals on two occasions and stalked him).

In contrast, courts have found the "because of sex" element in claims for same-sex sexual harassment satisfied where the plaintiff was sexually harassed because the defendant was sexually attracted to the plaintiff, *see Yeary v. Goodwill Indus. Knoxville, Inc.*, 107 F.3d 443, 448 (6th Cir. 1997) (holding that the male plaintiff sufficiently alleged that he was harassed "because of sex" where plaintiff alleged that he was the target of sexual attention of the male employer because the employer was attracted him, which created an institutional advantage because he was a man), and where the plaintiff was discriminated against because he did not meet stereotyped expectations of masculinity, *see Nichols v. Azteca Restaurant Enterprises, Inc*., 256 F.3d 864, 874 (9th Cir. 2001) (holding that verbal abuse by male restaurant employee's male co-employees, including referring to him as "she" and "her," commenting that he walked and carried his tray "like a woman," was "because of sex," as required to establish hostile environment sexual harassment, because such abuse reflected belief that employee did not act as a man should act).

### 2.     Race Discrimination and Racially Hostile Work Environment

As with a sexual harassment hostile work environment claim, in order to establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). "A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace. *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011) (citation omitted). "Harassment is based on race when it would not have occurred but for the plaintiffs race; the harassing conduct need not be overtly racist to qualify." *Id.* at 511. Same-race Caucasian-on-Caucasian racial harassment discrimination is actionable in certain circumstances, such as when a Caucasian alleges discrimination based on an association with a racial minority or a Caucasian alleges the loss of the benefits of associating with racial minorities in the workplace.

The Sixth Circuit has held that in order to state a cognizable claim under Title VII, the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated against on the basis of his association with a member of a recognized protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 574 (6th Cir. 2000), *cert. denied* 121 S. Ct. 657 (2000).

"Whether a plaintiff has standing to recover for discrimination directed against persons in a protected class of which he is not a member largely depends on the nature of the harm he claims

to have suffered." *Blanks v. Lockheed Martin Corp.*, 568 F. Supp. 2d 740, 743 (S.D. Miss. 2007). "Most courts will find standing where the plaintiff is able to point to a specific benefit or opportunity he has lost as a result of discrimination against others." *Id.* In contrast, other courts have denied standing where a plaintiff claims to have suffered emotional distress as a result of discrimination against coworkers. *See, e.g.*, *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1180 (7th Cir. 1998) (holding that a Caucasian plaintiff lacked standing, stating, "[i]f unease on observing wrongs perpetrated against others were enough to support litigation, all doctrines of standing and justiciability would be out the window."). There is, however, a "substantial line of cases finding standing under Title VII . . . where plaintiffs who are not in the protected class have claimed that discrimination against third parties in a protected class caused them to lose the benefit of interracial association." *Blanks*, 568 F. Supp. 2d at 744; *see also EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 452 (6th Cir. 1977).

### B.    Defendant's Arguments

Defendant contends that Plaintiff's complaint does not state a claim upon which relief can be granted for his claimed violations a hostile work environment based on same-sex sexual harassment or racial discrimination or his claim of retaliation, and the complaint is thus insufficient to support a default judgment. Defendant argues that Plaintiff's allegations, taken as true, do not support a claim that he was discriminated against "because of sex" because his claims describe, at best, crude male horseplay that is offensive and inappropriate, but is not actionable discrimination based on sex, because "Title VII is not a generic anti-harassment statute." Plaintiff's complaint does not allege that Defendant acted out of sexual desire or sexual attraction to Plaintiff. Finally, Plaintiff's complaint does not suggest general hostility toward men in the workplace or that Plaintiff

-11-

was discriminated against because he did not meet masculine stereotypes. Although Plaintiff's allegations suggest that Defendant acted in an inappropriate and offensive manner, Plaintiff fails to state an actionable discrimination claim.

Defendant also argues that, in the instant case, Plaintiff has not stated a cognizable claim for racial discrimination. Defendant emphasizes that Plaintiff's allegations of Mr. Gojcaj's racial slurs referencing African-Americans, even taken as true, do not support a claim that Plaintiff was discriminated against "because of" his race because Plaintiff has not alleged that he is a member of a protected class that was the focus of Defendant's discriminatory comments. Moreover, Plaintiff has not alleged that he was denied interpersonal contacts with African-American employees, that Defendant discriminated against African-American employees in its hiring or other employment practices, or that Defendant directed the alleged racial slurs at Plaintiff because of such an association.

Finally, Defendant notes that Plaintiff's retaliation claim is factually implausible. Plaintiff's complaint asserts that he did not file a charge of discrimination with the EEOC until February 27, 2008, and that thereafter Defendant immediately began to take retaliatory action against him that eventually led to his employment being terminated.  Plaintiff's employment, however, was terminated over five months prior to his filing a charge with the EEOC.  Plaintiff's retaliation claim thus cannot be substantiated and was largely abandoned by Plaintiff at the evidentiary hearing.

### C.  Plaintiff's Arguments

Plaintiff contends that by virtue of the entry of default, causation and his entitlement to damages have been established with the only issue left to be resolved being the amount of damages to which he is entitled. *Walker v. Brook Corp.*, No. 2:08-cv-14574, 2010 WL 1257341, at *2 (E.D.

Mich. March 30, 2010). Plaintiff requests an award for back-pay pursuant to 42 U.S.C. § 2000e-5(g) and Mich. Comp. Laws § 37.2801(1) and (3) in the amount of $17,762. ECF No. 33 at 4 (requesting $15,762 in back-pay for September 14, 2007 through February 2009, and $2,000 in back-pay for February 2009 through February 2010). Plaintiff also requests $50,000.00 in punitive damages pursuant to 42 U.S.C. § 1981, and $100,000.00 in compensatory damages for emotional distress and mental anguish pursuant to 42 U.S.C. § 1981(a) and Mich. Comp. Laws § 37.2801(1) and (3). Moreover, Plaintiff asserts that the Michigan state law pre-judgment interest rate of 3.00% is appropriate to apply to the award, and that the total interest amount on his requested back-pay and compensatory and punitive damages is $20,109.18. *Finnerty v. Wireless Retail, Inc.*, No. 2:04-cv-40247, 2009 WL 2568555 (E.D. Mich. Aug. 18, 2009); *Garner v. Grenadier Lounge*, No. 06-13318, 2008 WL 4852963 (E.D. Mich. Nov. 7, 2008).

Attorney fees are available in cases brought under Title VII by virtue of 42 USC § 2000e-5(k). Attorney fees are likewise available in cases brought under the Michigan Elliott-Larsen Civil Rights Act. Mich. Comp. Laws § 37.2801(3). Under the attorney fee provision of Title VII, a prevailing plaintiff "ordinarily is to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.15 (6th Cir. 2003). In determining what constitutes a reasonable attorney fee, the Court is required to multiply the number of hours reasonably expended in litigating and trying the case, by a reasonable hourly rate, known as the "Lodestar" method. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The existence of a contingent fee agreement between the prevailing plaintiff and his counsel does not serve to reduce the award of attorney fees that the defendant must pay. *See Venegas v. Mitchell*, 495 U.S. 82 (1990). It is also important to note that a prevailing

plaintiff is not limited in his recovery of attorney fees by the fact that the attorney fees total an amount which is double or triple the amount of the actual verdict. *Bell v. Prefix, Inc.*, No. 05-74311, 2011 WL 1100090 (E.D. Mich. March 22, 2011).

Courts routinely follow the State Bar of Michigan 2010 Economics of Law Practice study in determining the proper hourly attorney rate applicable to counsel for the prevailing party. *Bell*, 2011 WL 1100090, at *3; *Smith v. Khouri*, 481 Mich. 519, 530 (2008). Plaintiff's counsel asserts that, according to the State Bar study, he falls into the category of attorneys for whom the average billing rate is $400.00 per hour. At $400.00 per hour, Plaintiff requests an attorney fee award of $16,760.00 and $455.14 in litigation costs for a total award of attorney fees and costs award of $17,215.14. ECF No. 33 Ex. C.

### III.   Conclusions

Taking Plaintiff's factual allegations as true, Plaintiff's complaint does not plead nor did his testimony during the Rule 55 hearing establish viable claims for same-sex sexual harassment or racial discrimination. "[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the [default] judgment." *Alan Neuman Productions, Inc v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *see also Conetta v. Nat'l Hair Care Centers, Inc*., 236 F.3d 67, 76 (1st Cir. 2001) (noting that a defaulted defendant "may still contest a claim on the ground that the complaint does not add up to the elements of a cause of action"). A " 'defendant's default does not itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleading for the judgment entered.' " *Dalmayer v. Michigan*, No. 08-12784, 2009 WL 1378322, at *2 (E.D. Mich. May 14, 2009) (quoting *Nishimatsu Const. Co., Ltd., v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Plaintiff has not alleged or

established that he was discriminated against on the basis of his association with a member of a recognized protected class nor has he pointed to a specific benefit or opportunity he has lost as a result of discrimination against others as is required for a race discrimination claim alleged by a Caucasian. While the harassment Plaintiff alleges to have endured was sexual, crude, and derogatory in nature, Plaintiff does not allege it was "because of his sex" as required by Title VII. This is further evidenced by Plaintiff's EEOC intake questionnaire which reflects that two female coworkers and one male coworker allegedly suffered the "the same" abuse and treatment. Moreover Plaintiff's complaint does not suggest that Mr. Gojcaj or Mr. Bojaj were generally hostile toward men in the workplace or that Plaintiff was discriminated against because he did not meet masculine stereotypes.

Furthermore, at the evidentiary hearing, Plaintiff did not have an accurate memory of the chronology of his employment after his employment with Defendant was terminated and could not, therefore, explain why he believed he had suffered any damages. Indeed, he recalled leaving Zeez Management Services to begin work at a Speedway gas station. Plaintiff's 2006 through 2009 tax returns that were entered into evidence reflect no salary income from Speedway during that time. Instead, Plaintiff's tax returns reflect that in 2006 he earned a total of $21,181 composed of $499 from Dorey and Shepard, Inc., $13,390 from Defendant, and $7,292 from Central Michigan Personnel Services. In 2007 he earned a total of $11,435 composed of $11,097 from Defendant and $338 from Leelin Home Health. In 2008 he earned a total of $13,397 composed of $5,048 from Bay Human Services, $4,671 from Zeez Management Services, and $3,678 from Masleasing - Ford. Finally, in 2009 he earned a total of $12,643 from Bay Human Services. Plaintiff reported that his employment was terminated in September 2007, but was unable to recall the dates he was re-employed and there is no other evidence in the record to substantiate Plaintiff's employment dates

in 2008. Relying on the annual income information provided to the Court, Plaintiff earned more in 2008 ($13,397 excluding his unemployment benefits) and 2009 ($12,643 excluding his unemployment benefits) than he did in 2007 ($11,097) while working for Defendant. Accordingly, even if Plaintiff had pleaded viable claims, he has not identified any lost wages or established an entitlement to back-pay.

In order to establish that punitive damages are proper, Plaintiff must demonstrate, in relevant part, that the individuals perpetrating the discrimination acted with malice or reckless disregard as to whether Plaintiff's federally protected rights were being violated. Because the facts alleged in Plaintiff's complaint do not demonstrate that his federally-protected rights were violated, Plaintiff has likewise not established that punitive damages are appropriate in this case.

Finally, because there is no factual predicate for awarding compensatory or punitive damages based on the causes of action alleged in Plaintiff's complaint or the evidence presented at the evidentiary hearing addressing Plaintiff's request for a default judgment, the Court will deny Plaintiff's request for attorneys fees. *Christianburg Garment Co.*, 434 U.S. at 416-17 (a prevailing plaintiff under Title II "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

Accordingly, it is **ORDERED** that Plaintiff's motion for default judgment (ECF No. 23) is **DENIED**. This resolves the last pending issue and closes the case.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: December 20, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 20, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS